

**null / ALL**
**Transmittal Number: 30544319**
**Date Processed: 01/03/2025**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Marianne Litwa<br>Trans Union<br>2 Baldwin Pl<br>Crum Lynne, PA 19022-1370 |
| **Electronic copy provided to:** | Daisy Cornejo<br>Laura Rang<br>Anne Reader |

| | |
|---|---|
| **Entity:** | Trans Union LLC<br>Entity ID Number  1884665 |
| **Entity Served:** | Trans Union LLC |
| **Title of Action:** | Tammy Owens vs. Applied Data Finance, LLC, d/b/a Personify Financial |
| **Matter Name/ID:** | Tammy Owens vs. Applied Data Finance, LLC, d/b/a Personify Financial (16709927) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Violation of State/Federal Act |
| **Court/Agency:** | Polk County Court, FL |
| **Case/Reference No:** | 2024CC-010765-0000-00 |
| **Jurisdiction Served:** | Florida |
| **Date Served on CSC:** | 01/02/2025 |
| **Answer or Appearance Due:** | 20 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Seraph Legal, P.A.<br>813-567-1230 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

Filing # 213190064 E-Filed 12/19/2024 11:02:29 AM

KJ286
1-2-25   12:30

IN THE COUNTY COURT OF THE TENTH JUDICIAL CIRCUIT
IN AND FOR POLK COUNTY, FLORIDA
CIVIL DIVISION

TAMMY OWENS,

     *Plaintiff,*

v.                                       Case No.

APPLIED DATA FINANCE, LLC, d/b/a
PERSONIFY FINANCIAL, AND TRANS
UNION LLC,

     *Defendants.*

_____/

## SUMMONS

THE STATE OF FLORIDA:
TO EACH SHERIFF OF THE STATE:

     **YOU ARE COMMANDED** to serve this summons and a copy of the complaint or petition in this action on the Defendant(s) *whose name and address is:*

          **Trans Union LLC**
          **c/o Corporation Service Company**
          **1201 Hays St.**
          **Tallahassee, FL 32301**

     Each Defendant is required to serve written defenses to the complaint or petition on Plaintiff's attorney, *whose name and address is:*

          **Brandon D. Morgan, Esq.**
          **Seraph Legal, P.A.**
          **2124 W. Kennedy Blvd., Suite A**
          **Tampa, FL 33606**
          **BMorgan@SeraphLegal.com**

within 20 days after service of this summons on that defendant, exclusive of the day or service, and to file the original of the defenses with the clerk of this court either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

**DATED** on _____12/19/2024_____



**STACY M. BUTTERFIELD**
Clerk of the Court

By:_____
As Deputy Clerk

If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the Office of the Court Administrator, (863) 534-4690, within two (2) working days of your receipt of this (describe notice); if you are hearing or voice impaired, call TDD (863) 534-7777 or Florida Relay Service 711.

2024CC-010765-0000-00        Received in Polk 12/19/2024 11:32 AM

Filing # 213190064 E-Filed 12/19/2024 11:02:29 AM

IN THE COUNTY COURT OF THE TENTH JUDICIAL CIRCUIT
IN AND FOR POLK COUNTY, FLORIDA
CIVIL DIVISION

TAMMY OWENS,

    *Plaintiff,*

    v.

APPLIED DATA FINANCE, LLC, d/b/a
PERSONIFY FINANCIAL, AND TRANS
UNION LLC,

    *Defendants.*

Case No:

**JURY TRIAL DEMANDED**

## COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW** the Plaintiff, **Tammy Owens** ("**Ms. Owens**"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendant, **Applied Data Finance, LLC,** doing business as **Personify Financial** ("**Applied Data**") and **Trans Union LLC** ("**Trans Union**") (jointly, the "**Defendants**"), stating as follows:

## PRELIMINARY STATEMENT

1.    This is an action for damages exceeding $8,000 but not $50,000, exclusive of attorneys' fees and costs, brought by Ms. Owens against the Defendants for violations of the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et seq.* ("**FCRA**"), and against Applied Data for *Breach of Contract.*

## JURISDICTION AND VENUE

2.    Jurisdiction arises under the FCRA, 15 U.S.C. § 1681p, and § 34.01, Fla. Stat.

3.    The Defendants are subject to the jurisdiction of this Court pursuant to § 48.193, Fla. Stat.

4.      Pursuant to § 47.051, Fla. Stat., venue is proper in Polk County, Florida, because the acts complained of were committed and/ or caused by the Defendants within Polk County.

## PARTIES

### Ms. Owens

5.      **Ms. Owens** is a natural person residing in the City of Lake Wales, Polk County, Florida.

### Applied Data

6.      **Applied Data**, doing business as Personify Financial, is a Delaware limited liability company, with a principal business address of 15373 Innovation Drive, Suite 380, San Diego, CA 92128.

7.      Applied Data's Florida registered agent is **Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301**.

### Trans Union

8.      **Trans Union** is a Delaware limited liability company, with a principal business address of 555 West Adams Street, Chicago, IL 60661.

9.      Trans Union is registered to conduct business in the State of Florida, where its registered agent is **Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301**.

10.      Trans Union is a *Consumer Reporting Agency* ("**CRA**") within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that it, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and uses various means of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically including mail and telephone communications.

## FACTUAL ALLEGATIONS

### Applied Data Makes Illegal Loan to Ms. Owens

11.     On or about November 18, 2021, Ms. Owens obtained a personal loan (the "**Loan**" or the "**Debt**") from www.personifyfinancial.com, a website owned and operated by Applied Data.

12.     The Loan carried an annual interest rate of 96.91%.

13.     Applied Data utilized various means to collect this Debt, including credit reporting to defendant Trans Union.

14.     In November 2022, Applied Data agreed to cease collection of the Debt, reduce the balance of the Debt to $0, and request deletion of its tradeline from any CRA to which it reports, which included Trans Union and Clarity Services, Inc. ("Clarity"), a nationwide specialty CRA.

15.     Applied Data could have easily submitted an *Automated Universal Datasheet* ("**AUD**") correction to Trans Union, instructing Trans Union to delete the tradeline – a process which typically takes under 48 hours.

16.     Alternatively, Applied Data could have reported the status of the account as "DA," meaning "delete account," during its next regular in-cycle batch reporting, which would have resulted in Trans Union deleting the tradeline from Ms. Owens' credit file as well, although this could have taken as long as 30 days.

17.     Applied Data did neither, despite a contractual obligation to do so.

18.     Applied Data also emailed Ms. Owens on January 10, 2023, stating: "Personify Financial has charged off your loan because its terms and conditions have not been satisfied."

19.     Applied Data attached a "Charge-off Notice" to the email, with a "charge-off balance" of $6,922.58.

20.     After agreeing to waive the balance, stop collection activity and request deletion of its tradeline in November 2022, Applied Data continued making *new* reports every month to Trans Union and Clarity, re-alleging the Debt was still owed by Ms. Owens and was severely past due.

21.     Applied Data continued to make such reports as recently as December 2024.

22.     As a result, the tradeline continues to report to Trans Union, and Ms. Owens' credit report reflects a false past-due balance of $6,922. **SEE PLAINTIFF'S EXHIBIT A.**

23.     As of November 2022, Applied Data knew that any further collection attempts were prohibited and in violation of its own agreement to cease collection.

24.     Despite this, Applied Data continued to attempt to collect the alleged $6,922 balance from Ms. Owens *vis-à-vis* its continued credit reporting to at least two CRAs.

25.     Applied Data, when reporting its tradeline concerning Ms. Owens to Trans Union, falsely certified the debt being reported was lawful and legally owed, each and every month it reported the data.

26.     In May 2024, Ms. Owens disputed the Applied Data tradeline to Trans Union, stating the amount was not owed and that the creditor (*i.e.*, Applied Data) had agreed to delete the balance from her credit report.

27.     Trans Union's automated systems initiated an *Automated Consumer Dispute Verification* Request ("**ACDV**") which was delivered to Applied Data through a system known as e-OSCAR.

28.     Applied Data responded to the ACDV, certifying to Trans Union that its information was accurate and required no update, change, or modification.

29.     If a data furnisher like Applied Data decides to report disputed information as verified, "the question of whether the furnisher behaved reasonably will turn on whether the

furnisher acquired sufficient evidence to support the conclusion that the information was true." *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295 (11th Cir. 2016).

30.     Zero evidence exists to support the conclusion that Applied Data's reported data was true, and, indeed, could not possibly be true since Applied Data agreed to cease collection of the balance in November 2022, resulting in a $0 balance owed.

31.     As such, Applied Data could not have possibly obtained any, much less sufficient evidence, to support that its reports were accurate.

32.     Applied Data's confirmation of accuracy when it obviously was not accurate shows a willful disregard for its investigative duties under the FCRA.

33.     Subsequent disputes on August 8, 2024, August 27, 2024, October 8, 2024, October 18, 2024, October 27, 2024, November 2, 2024, November 9, 2024, November 22, 2024 and December 9, 2024 resulted in the same rubber-stamping of accuracy by Applied Data and Trans Union, without any real investigation.

34.     At no point did Applied Data so much as report the alleged Debt as "disputed."

35.     In July 2024, Ms. Owens mailed a dispute to Trans Union, stating the name of the creditor as it does business, its corporate name (Applied Data Finance), as well as a complete copy of the tradeline exactly as it appeared on her consumer disclosure.

36.     Ms. Owens explained the Personify Financial account was disputed on the basis of a mutually agreed upon settlement in which all parties agreed the balance of the loan was now $0, effective November 2022.

37.     As supporting evidence, Ms. Owens included a redacted version of a settlement agreement in which Personify Financial agreed to reduce the balance to $0.

38.     The settlement agreement contained the full loan number from Personify Financial, which matched the loan number or account number reported by Trans Union in Ms. Owens' credit file.

39.     The initial loan amount was reported to Trans Union as $5,250, and the settlement agreement confirmed the initial loan amount was $5,250.

40.     The settlement agreement was signed by Krishna Gopinathan, the CEO of Applied Data Finance, LLC.

41.     Trans Union, upon receipt of Ms. Owens' dispute, was required to make a reasonable investigation into her dispute and report the results of the investigation back to her within 30 days. *See* 15 U.S.C. § 1681i(a)(1)(A).

42.     Ms. Owens' dispute – that Applied Data had waived the balance and agreed to delete its tradeline – was readily and objectively verifiable by Trans Union, especially in light of a signed agreement by Applied Data's CEO attesting to these facts.

43.     Nonetheless, Trans Union made no independent investigation whatsoever, and simply initiated an ACDV which was sent to Applied Data.

44.     Applied Data verified the information as accurate.

45.     Upon receipt of the ACDV response, Trans Union utilized an automated system which made rudimentary checks of tradeline data between what Applied Data had reported and the data contained in Trans Union's own file on Ms. Owens, *e.g.*, her name, address, date of birth, and Social Security number.

46.     This concluded Trans Union's "investigation."

47.     Applied Data provided no documents or other evidence to Trans Union which would have indicated the Debt was still, somehow, owed.

48.     In other words, despite a consumer providing a detailed and meritorious dispute, and the provision of a signed agreement calling for balance waiver and tradeline deletion, Trans Union viewed this as less reliable than the electronic box being clicked on by Applied Data, indicating the information was verified as accurate, especially considering Trans Union knew Applied Data is a lender which makes loans at interest rates more than five times the legal limit in Florida.

49.     Trans Union sent "investigation results" to Ms. Owens, stating that it received her dispute but concluded the $6,922 balance was still owed. **SEE PLAINTIFF'S EXHIBIT B.**

50.     In many of her other disputes, Ms. Owens referenced the contract she had mailed Trans Union in August 2024 and implored Trans Union to actually read it.

51.     In each and every instance, Trans Union made no independent evaluation of its own and simply sent ACDVs to Applied Data to start, as well as finish, its investigations.

52.     For at least the last 40 years, courts in this district have recognized that a CRA cannot rely upon its data furnisher exclusively, when the consumer disputes the accuracy of the furnisher's version of events and provides evidence to the contrary.

53.     The CRA must make some independent investigation of its own, "Merely reporting whatever information the creditor furnished was not reasonable, especially where the defendant knew of the impending dispute between the [consumer] and [data furnisher]." *Swoager v. Credit Bureau of Greater St. Petersburg*, 608 F. Supp. 972 (M.D.Fla.1985).

54.     Trans Union's dispute resolution systems are heavily tilted in favor of its data furnishers, from whom it receives revenue monthly, and rest on the premises the data furnishers are always right, until categorically proven wrong by the consumer.

55.　As a result, consumers like Ms. Owens are left in a scenario where their only way to have their credit report corrected rests on their ability to disprove a negative.

56.　Here, Trans Union was provided with information which was readily, easily, and objectively verifiable – the relevant parts of a legally-enforceable agreement between Plaintiff and Applied Data was furnished to Trans Union.

57.　Despite providing an agreement from Applied Data which released Ms. Owens from any obligation to the Loan, indicating Ms. Owens owed no debt, and Ms. Owens' 2022 lawsuit against Applied Data being public record, easily verifiable by Trans Union, tradeline data with an outstanding balance was nonetheless verified as "accurate" by Trans Union.

58.　Trans Union made no attempt to investigate Ms. Owens' claims, and instead relied solely upon the ACDV confirmation from Applied Data.

59.　In the eyes of Trans Union, a detailed, meritorious dispute with copious documentation is insufficient to overcome Applied Data's simple checking of a box confirming its information was "verified as accurate," even though Applied Data provided no information to Trans Union suggesting it did not agree to discharge Ms. Owens' alleged debt.

60.　Other creditors, and potential creditors, of Ms. Owens have received copies of her Trans Union report containing the false Personify Financial tradeline, showing a purported unpaid balance.

61.　The presence of a large-dollar "charged off" balance on Ms. Owens report caused substantially lower credit scores to be furnished to Ms. Owens creditors and potential creditors, resulting in denials of credit or approvals at less-favorable terms than she otherwise would have received.

62.     In sum, Trans Union grossly failed to maintain reasonable procedures to ensure maximum possible accuracy of the information it sold concerning Plaintiff.

63.     Ms. Owens has suffered significant actual damages from Defendants' failures to correct her report, including lost economic opportunities, wasted time, diminished credit scores and credit capacity, and mental anguish and frustration.

64.     Ms. Owens has hired the aforementioned law firm to represent her in this matter and has assigned her right to recovery of fees and costs to the firm.

## COUNT I
## APPLIED DATA'S BREACH OF CONTRACT

65.     Ms. Owens adopts and incorporates Paragraphs 1 – 64 as if fully restated herein.

66.     Applied Data agreed to discharge the alleged Debt and reduce its balance to $0.

67.     Applied Data did not discharge the alleged Debt and continued to attempt to collect it from Ms. Owens *vis-à-vis* its monthly credit reporting to Trans Union.

68.     Applied Data not only failed to request deletion from the CRAs it reported account information to, it continued to insist that the information ***should not be*** deleted when responding to ACDVs sent by Trans Union.

69.     As a result, Ms. Owens was damaged, since Trans Union and Clarity continued to report she had a charged-off, past due $6,922 balance owed to Applied Data after November 2022 when she did not; the appearance of the highly-derogatory information was included by Trans Union in reports sold to lenders, and potential lenders and caused direct, actual damages.

70.     Each monthly report was a *per se* attempt to collect the Debt alleged therein.

71.     Despite numerous requests to remediate the issue, Applied Data continued to breach its agreement with Ms. Owens.

72.     Applied Data knew, or should have known, it was in breach of its contract with Ms.

Owens and could easily foresee that its failures would cause great harm to Ms. Owens.

**WHEREFORE,** Ms. Owens respectfully requests this Honorable Court enter judgment against Applied Data, ordering:

a.  Actual damages from Applied Data's breach of contract;

b.  The attorney's fees and costs spent enforcing the agreement; and,

c.  Such other relief as this Court deems just and proper.

<div align="center">

**COUNT II**
**APPLIED DATA'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681s-2(b)**

</div>

73.  Ms. Owens adopts and incorporates Paragraphs 1 – 64 as if fully restated herein.

74.  Applied Data violated **15 U.S.C. § 1681s-2(b)** when it failed, on at least 11 separate occasions, to conduct a reasonable investigation after receiving notice of dispute of the Debt from Trans Union, as any reasonable investigation would have concluded that the account could not be verified as accurate, as Applied Data had signed an agreement which reduced the balance to $0, and this information is readily and objectively verifiable.

75.  Indeed, many of the disputes were coded in Trans Union's ACDVs as "consumer claims creditor agreed to delete account," a fact which Applied Data knew as its own CEO had signed a contract memorializing its agreement to do so.

76.  Applied Data did not so much as update its reporting to indicate the disputed, discharged debt was disputed by Ms. Owens.

77.  Applied Data's conduct was a result of its regular policies and procedures, which frequently result in the verification of reported information as accurate, when it is not, and as undisputed, or previously disputed, when still disputed.

78.  Applied Data's conduct was thus willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable investigations, and its

policies could reasonably be foreseen to cause harm to Ms. Owens.

79.     Accordingly, pursuant to 15 U.S.C. § 1681n, Applied Data is liable to Ms. Owens for the greater of her actual damages and statutory damages of up to $1,000 for each occurrence, as well as punitive damages, reasonable attorney's fees, and costs.

**WHEREFORE,** Ms. Owens respectfully requests this Honorable Court enter judgment against Applied Data, ordering:

    a.  The greater of statutory damages of $1,000 per incident or Ms. Owens' actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

    b.  Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

    c.  Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and,

    d.  Such other relief that this Court deems just and proper.

**COUNT III**
**APPLIED DATA'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681s-2(b)**
*Pled in the Alternative to Count II*

80.     Ms. Owens adopts and incorporates Paragraphs 1 – 64 as if fully restated herein.

81.     Applied Data violated **15 U.S.C. § 1681s-2(b)** when it failed, on at least 11 separate occasions, to conduct a reasonable investigation after receiving notice of dispute of the Debt from Trans Union, as any reasonable investigation would have concluded that the account could not be verified as accurate, as Applied Data had signed an agreement which reduced the balance to $0, and this information is readily and objectively verifiable.

82.     Indeed, many of the disputes were coded in Trans Union's ACDVs as "consumer claims creditor agreed to delete account," a fact which Applied Data knew as its own CEO had signed a contract memorializing its agreement to do so.

83.     Applied Data did not so much as update its reporting to indicate the disputed,

discharged debt was disputed by Ms. Owens.

84.    Applied Data's conduct was a result of its regular policies and procedures, which frequently result in the verification of reported information as accurate, when it is not, and as undisputed, or previously disputed, when still disputed.

85.    The conduct, action, and inaction of Applied Data was the result of negligence.

86.    Accordingly, pursuant to 15 U.S.C. § 1681o, Applied Data is liable to Ms. Owens for her actual damages, as well as reasonable attorney's fees and costs.

**WHEREFORE,** Ms. Owens respectfully requests this Honorable Court enter judgment against Applied Data, ordering:

a.  Ms. Owens' actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.  Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and,

c.  Such other relief that this Court deems just and proper.

### COUNT IV
### TRANS UNION'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)

87.    Ms. Owens adopts and incorporates Paragraphs 1 – 64 as if fully restated herein.

88.    Trans Union violated **15 U.S.C. § 1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy of consumer reports sold regarding Ms. Owens when Trans Union sold reports which reported a balance due to Personify Financial, when no balance was owed, and Trans Union knew via Ms. Owens' disputes that no balance was owed.

89.    Trans Union has been sued before for identical conduct and is thus aware that its procedures for ensuring accuracy of reports are flawed.

90.    Trans Union's conduct was thus willful and intentional, or, alternately, was done with reckless disregard for its duties under the FCRA to provide reports with maximum possible accuracy.

91.    Accordingly, Trans Union is liable, pursuant to 15 U.S.C. § 1681n, for the greater of Ms. Owens' actual damages or statutory damages of $1000 per violation, plus punitive damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Ms. Owens respectfully requests this Honorable Court enter judgment against Trans Union, ordering:

a.  The greater of statutory damages of $1,000 per incident or Ms. Owens' actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.  Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.  Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and,

d.  Such other relief that this Court deems just and proper.

<div align="center">

**COUNT V**
**<u>TRANS UNION'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)</u>**
***Pled in the Alternative to Count IV***

</div>

92.    Ms. Owens adopts and incorporates Paragraphs 1 –64 as if fully restated herein.

93.    Trans Union violated **15 U.S.C. § 1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy of consumer reports sold regarding Ms. Owens when Trans Union sold reports which reported a balance due to Personify Financial, when no balance was owed, and Trans Union knew via Ms. Owens' disputes that no balance was owed.

94.    Trans Union owed Ms. Owens a legal duty to utilize reasonable procedures to assure the maximum possible accuracy of its consumer reports regarding Ms. Owens.

95.    Trans Union breached this duty when it sold consumer reports containing false and out-of-date tradeline information on the Personify Financial account, as it should have reflected a $0 balance with $0 past due, if it was reported at all.

96.    Clarity thus acted negligently, and Ms. Owens is entitled to her actual damages,

attorneys' fees, and costs, pursuant to 15 U.S.C. § 1681o.

**WHEREFORE,** Ms. Owens respectfully requests this Honorable Court enter judgment against Trans Union, ordering:

 a. Ms. Owens' actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

 b. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and,

 c. Such other relief that this Court deems just and proper.

## COUNT VI
### TRANS UNION'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681i(a)(1)(A)

97. Ms. Owens adopts and incorporates Paragraphs 1 – 64 as if fully restated herein.

98. Trans Union violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed, on at least 11 separate occasions, to conduct a reasonable investigation into a dispute of the Personify Financial tradeline by Ms. Owens, since any reasonable investigation would have concluded that the Personify Financial account did not have any balance owed, and that all reference to it should be deleted, and this information was readily and objectively verifiable.

99. Trans Union's conduct was a result of its regular policies and procedures, which frequently result in the verification of reported information as accurate, when it is not, and as undisputed, or previously disputed, when still disputed.

100. Trans Union's conduct was thus willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable investigations, and its policies could reasonably be foreseen to cause harm to Ms. Owens.

101. Accordingly, pursuant to 15 U.S.C. § 1681n, Trans Union is liable to Ms. Owens for the greater of her actual damages and statutory damages of up to $1,000 for each occurrence, as well as punitive damages, reasonable attorney's fees, and costs.

**WHEREFORE,** Ms. Owens respectfully requests this Honorable Court enter judgment against Trans Union, ordering:

a. The greater of statutory damages of $1,000 per incident or Ms. Owens' actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and,

d. Such other relief that this Court deems just and proper

**COUNT VII**
**TRANS UNION'S NEGLIGENT VIOLATIONS OF THE FCRA,**
**15 U.S.C. § 1681i(a)(1)(A)**
*Pled in the Alternative to Count VI*

102. Ms. Owens adopts and incorporates Paragraphs 1 – 64 as if fully restated herein.

103. Trans Union violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed, on at least 11 separate occasions, to conduct a reasonable investigation into a dispute of the Personify Financial tradeline by Ms. Owens, since any reasonable investigation would have concluded that the Personify Financial account did not have any balance owed, and that all reference to it should be deleted, and this information was readily and objectively verifiable.

104. Trans Union wed Ms. Owens a legal duty to conduct a reasonable investigation into her disputes.

105. Trans Union breached this duty when it failed to make a reasonable investigation.

106. Trans Union's conduct was thus negligent, and as a result, pursuant to 15 U.S.C. § 1681o, Clarity is liable to Ms. Owens for her actual damages, as well as her reasonable attorney's fees, and costs.

**WHEREFORE,** Ms. Owens respectfully requests this Honorable Court enter judgment against Trans Union, ordering:

    a.  Ms. Owens' actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

    b.  Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and,

    c.  Such other relief that this Court deems just and proper.

<u>**DEMAND FOR JURY TRIAL**</u>

Ms. Owens hereby demands a jury trial on all issues so triable.

Respectfully submitted on December 19, 2024 by:

<div align="right">

**SERAPH LEGAL, P. A.**

<u>/s/ *Brandon D. Morgan*</u>
Brandon D. Morgan, Esq.
Florida Bar Number: 1015954
BMorgan@SeraphLegal.com
Thomas M. Bonan, Esq.
Florida Bar Number: 118103
TBonan@SeraphLegal.com
2124 W. Kennedy Blvd., Suite A
Tampa, FL 33606
Tel: 813-567-1230 (Ext: 305)
Fax: 855-500-0705
*Counsel for Plaintiff*

</div>

<u>**PLAINTIFF'S EXHIBIT LIST**</u>

A     Ms. Owens' Trans Union Consumer Disclosure via Credit Karma, September 3, 2024, Personify Financial Tradeline - Excerpt

B     Ms. Owens' Trans Union Dispute Results, August 2, 2024, Personify Financial Tradeline – Excerpt

# EXHIBIT A
## Ms. Owens' Trans Union Consumer Disclosure via Credit Karma, September 3, 2024, Personify Financial Tradeline – Excerpt

**PERSONIFY FINANCIAL**                                   **$6,922.00**
Reported: Jul. 31, 2024                                        **Closed**

### Overview

You have **100%** left to pay on this loan.

| | |
|---|---|
| Balance | Highest Balance |
| $6922 | $5250 |
| Monthly payment | No Info |
| Opened | Nov. 17, 2021 (2 yrs, 9 mos) |
| Term | 36 months |
| Last payment | Jul. 21, 2022 |
| Current Payment Status | Charge-off |
| Worst Payment Status | 90-119 Days Late |

### Account Details

| | |
|---|---|
| Account status | Derogatory |
| Type | Unsecured |
| Responsibility | Individual |
| Remarks | Profit and loss write-off |
| | Profit and loss write-off |
| Times 30/60/90 days late | 1/1/1 |
| Closed | Dec. 31, 2022 |

# EXHIBIT C

## Ms. Owens' Trans Union Dispute Results, August 2, 2024, Personify Financial Tradeline – Excerpt

### Your Investigation Results

INVESTIGATION RESULTS - DISPUTED INFORMATION UPDATED AND OTHER INFORMATION UPDATED: A change was made to the item(s) based on your dispute and other information has also changed.

PERSONIFY FINANCIAL [redacted] (PO BOX 208417, DALLAS, TX 75320, (855) 471-4086)

We investigated the information you disputed and updated: **Date Updated; Rating; Historical Trended Data.** Here is how this item appears on your credit report following our investigation.

**Date Opened:** 11/17/2021
**Responsibility:** Individual Account
**Account Type:** Installment Account
**Loan Type:** UNSECURED
**Balance:** $6,922
**Date Updated:** 06/30/2024
**Payment Received:** 07/21/2022 ($0)
**Last Payment Made:** 07/21/2022
**High Balance:** $5,250
**Original Charge-off:** $6,922
**Past Due:** >$6,922<
**Pay Status:** >Charged Off<
**Terms:** Bi-weekly for 35 months
**Date Closed:** 12/31/2022
>Maximum Delinquency of 90 days in 11/2022 for $1,417<

**Remarks:** >UNPAID BALANCE CHARGED OFF<
**Estimated month and year that this item will be removed:** 08/2029

| | 05/2024 | 04/2024 | 03/2024 | 02/2024 | 01/2024 | 12/2023 | 11/2023 | 10/2023 | 09/2023 | 08/2023 | 07/2023 | 06/2023 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | C/O | C/O | C/O | C/O | C/O | C/O | C/O | C/O | C/O | C/O | C/O | C/O |

| | 05/2023 | 04/2023 | 03/2023 | 02/2023 | 01/2023 | 12/2022 | 11/2022 | 10/2022 | 09/2022 | 08/2022 | 07/2022 | 06/2022 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | C/O | C/O | C/O | C/O | C/O | C/O | 90 | 60 | 30 | OK | OK | OK |

| | 05/2022 | 04/2022 | 03/2022 | 02/2022 | 01/2022 | 12/2021 | 11/2021 |
|---|---|---|---|---|---|---|---|
| Rating | OK | OK | OK | OK | OK | OK | OK |

